UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL CHARLES JABLONSKI,

    Plaintiff,                                         Civil Action No. 19-CV-11817

vs.                                                  HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross motions for summary judgment [docket entries 13 and 18]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

This is a social security disability case. Plaintiff filed for disability insurance benefits in November 2011 (Tr. 244), claiming to have been disabled since October 2009 due to depression and problems with his back, neck, shoulders, and feet (Tr. 263). His insured status expired in September 2013 (Tr. 249). Following a hearing in January 2013 (Tr. 905-38), the Administrative Law Judge ("ALJ") denied plaintiff's application in March 2013 (Tr. 991-1008) on the grounds that, despite his various impairments,[1] plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work (Tr. 132). This became defendant's

---

[1] The ALJ found that plaintiff's severe impairments are "degenerative disc disease of the spine; degenerative joint disease of the left shoulder, left hip and left knee; history of Chiari malformation with implantation of shunt; obstructive sleep apnea (OSA); carpal tunnel syndrome (CTS); depression" (Tr. 127).

final decision when the Appeals Council denied plaintiff's request for review in July 2014 (Tr. 1009-15).

Plaintiff filed suit, challenging defendant's decision on the grounds that it was not supported by substantial evidence. In March 2015, the Court granted plaintiff's motion for summary judgment and remanded for further proceedings. *See Jablonski v. Comm'r of Soc. Sec.*, No. 14-CV-13776, 2015 WL 1493096 (E.D. Mich. Mar. 31, 2015). The Court identified eight errors in the ALJ's assessment of plaintiff's RFC[2] and remanded with instructions that the ALJ make specific findings to correct these errors and that he revise his RFC assessment of plaintiff and his hypothetical questions to the vocational expert ("VE") accordingly.

The ALJ held a post-remand hearing in September 2015 (Tr. 939-90) and again denied plaintiff's application in January 2016 (Tr. 872-904). This became defendant's final decision in January 2017 when the Appeals Council denied plaintiff's request for review (Tr. 858-65). Apparently plaintiff did not receive a copy of that decision, and in May 2019 the Appeals Council granted plaintiff's request for an extension of time to seek judicial review (Tr. 843-44).

In his post-remand decision, the ALJ found that plaintiff has the following severe impairments:

> tibial neuropathy of the bilateral ankles; degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc disease

---

[2] The Court found that the ALJ had neglected to make findings, or sufficient findings, regarding (1) the side effects of plaintiff's forty medications, (2) plaintiff's alleged need to take daily naps, (3) plaintiff's bilateral ankle pain, (4) the pain and numbness in plaintiff's feet, (5) the numbness in plaintiff's right leg, (6) plaintiff's bilateral carpal tunnel syndrome, (7) plaintiff's headaches, and (8) plaintiff's incontinence. *See Jablonski*, 2015 WL 1493096, at *2-6.

>of the cervical spine; degenerative joint disease of the left shoulder, left knee, and left hip; osteoarthritis; allergies; bilateral carpal tunnel syndrome; history of Chiari malformation with shunt; obstructive sleep apnea; headaches; benign prostatic hyperplasia; incontinence; chronic kidney disease, stage 2-3; depression; and anxiety.

(Tr. 878). Despite these impairments, the ALJ found that plaintiff has the RFC to perform a limited range of light work; that he could lift up to twenty pounds occasionally and ten pounds frequently; that he could stand/walk for six hours per day and sit for six hours per day; that he could occasionally push, pull, or use foot controls; that he "could frequently perform handling and fingering bilaterally"; that he was limited to simple, routine, repetitive work; and that certain other limitations applied (e.g., avoiding vibration, heights, dust, and noise) (Tr. 881-82). Based on testimony from a VE, the ALJ concluded that plaintiff was not disabled during the relevant period (i.e., from the alleged disability onset date in October 2009 to the expiration of his insured status in September 2013) because a person with this RFC, and with plaintiff's age, education, and work experience, could do unskilled, light-level work as an office clerk, reception information clerk, or packer (Tr. 895).

Having reviewed the ALJ's decision, the voluminous administrative record, and the parties' briefs, the Court concludes that the ALJ's decision is not supported by substantial evidence[3] because, as before, his evaluation of plaintiff's RFC is flawed, and this flawed RFC

---

[3] As this Court noted previously,

>[u]nder [42 U.S.C.] § 405(g), the issue is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). In making this determination the Court does not

evaluation was incorporated in the hypothetical questions used to obtain the VE testimony the ALJ adopted in determining that work existed that plaintiff could perform during the relevant period.

The first error concerns the ALJ's evaluation of plaintiff's headaches. As the Court noted in its last opinion in this matter,

> [p]laintiff testified that he experiences incapacitating migraines six to eight times per month (Tr. 170). The ALJ rejected this testimony, finding that plaintiff does not experience migraines "with such frequency or intensity that he would be unable to fulfill the obligations of a fulltime work schedule" (Tr. 134). However, the reasons cited by the ALJ do not withstand scrutiny. The ALJ noted that plaintiff's "headaches improved over the past several years after treatment of increased pressure in his head with VP shunt placement" (Tr. 709) and that "in 2010, the claimant had also reported that his headaches were significantly improved after he received better care for his sleep apnea" (Tr. 129). Nonetheless, the fact that plaintiff's headaches improved does not mean he has none, and the ALJ did not quantify the frequency, intensity or duration of the headaches plaintiff still has.

*Jablonski*, 2015 WL 1493096, at *5 (footnotes omitted). The Court ordered that "[o]n remand, the ALJ must make more specific findings about plaintiff's headaches, and include these findings in his RFC assessment and in his hypothetical questions to the VE." *Id.*

At the post-remand hearing, plaintiff testified that during the relevant period he

---

> review the matter de novo, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

*Jablonski*, 2015 WL 1493096, at *1.

experienced three to five migraines per month and that each headache "would kind of put me out for a few days because I would have to rest or take a shot or just lie down because it was incapacitating" (Tr. 949, 957, 973-74). "[U]p to three times a month" plaintiff was injecting himself with a migraine medication, Sumatriptan (Tr. 950-51). Plaintiff testified that his migraines occurred less frequently ("I might be down to two or three" per month) following his shunt revision surgery in 2014 (Tr. 956-57). He indicated that he needs a day or two days to recover from a migraine (Tr. 971) and that he must "lay [sic] down most of that day" (Tr. 973). Plaintiff also indicated that while he experiences migraines less frequently following the shunt revision surgery, the intensity has remained the same, and he is "down one to two days" with each headache (Tr. 974). The VE testified that a person is unemployable if he regularly misses two or more days of work per month (Tr. 986, 988). The VE at the earlier hearing expressed the same opinion (Tr. 937).

Contrary to this Court's instructions, the ALJ did not make any findings regarding the frequency, intensity, or duration of plaintiff's headaches. Rather, the ALJ noted that plaintiff has frequently complained of headaches and obtained treatment from various providers, including various migraine medications and a headache evaluation at the Cleveland Clinic in September 2014 (Tr. 884). The ALJ also noted that in April 2014 plaintiff reported that his headaches improved following his shunt revision surgery in February 2014. *Id.*[4]

---

[4] The ALJ summarized and evaluated the evidence regarding plaintiff's headaches as follows:

> The claimant testified that . . . [h]e had migraines 3 to 4 times a month. Noise exacerbated his headaches. . . .
>
> Prior to the alleged onset date of disability, the claimant had a

>
> Chiari I malformation that required a C1 decompression in 2005. The claimant also had a shunt implanted in 2006. He had enlarged ventricles and subsequently suffered from migraine headaches with photophobia, phonophobia, fatigue, and cognitive slowing (Exhibits 11F and 23F). The claimant was prescribed Fioricet for control of headache pain (Exhibit 8F). In April 2013, the claimant reported that his headaches improved once he stopped using the medication Diamox upon his neurologist's advice due to frequent urination (Exhibit 16F, p. 16). The claimant's primary care physician characterized his headaches as tension headaches (Ex. 16F, p. 25). The claimant underwent a neurological consultation at Cleveland Clinic on November 26, 2013. He complained that his headaches had worsened and that he felt that there was an obstruction in his shunt. Physical examination revealed no abnormalities. A shunt series and CT scan of the abdomen revealed that his shunt had migrated and was coiled around the anterior thoracic wall (Exhibit 23F). The claimant returned to the Cleveland Clinic on February 28, 2014, for laproscopic shunt revision surgery. The claimant was discharged from hospital care on March 4, 2014. . . .
>
> On April 21, 2014, the claimant reported that his headaches had improved. A CT scan showed that his shunt revision was stable with no fluid accumulation (Exhibit 26F). In May 2014, the claimant reported that his headaches had improved overall but were still present. He continued to take Fioricet about 5 times a week. This medication provided some relief of his headaches. . . . Mark Luciano, M.D., Ph.D., a neurologist, noted that the claimant's headaches could be related to weather changes or may be from medication overuse (Exhibit 27F). On September 17, 2014, the claimant presented to Cleveland Clinic for a headache evaluation. He reported frontal headaches every 2 to 3 days for which he used Imitrex, Vicodin, and Fioricet. Physical examination revealed no positive findings. The claimant was offered Botox injections for treatment, as there was no need for any additional medications (Exhibit 33F). In June 2015, the claimant reported that his headaches had been less frequent with the use of Paxil for depression and anxiety (Exhibit 36F, p. 52).
>
> The District Court order recommended reassessment of the claimant's headaches. The claimant testified that his headaches were successfully treated with medications and rest. His headaches

At least three errors in the ALJ's evaluation of plaintiff's headaches are apparent. First, the ALJ disregarded the Court's remand instructions, which clearly directed him to make specific findings as to the frequency, intensity, and duration of plaintiff's headaches and to incorporate these findings in a revised RFC assessment and in revised hypothetical questions to the VE. *See Jablonski*, 2015 WL 1493096, at *5. The ALJ did not do this. Instead, he simply summarized the evidence; found that plaintiff's headaches had improved with medication, rest, treatment for his sleep apnea, and shunt revision surgery; and concluded that his headaches could be accommodated with a low-stress job that avoids exposure to "excessive noise" (Tr. 884, 894). These findings are not what the Court's remand instructions required. As the Supreme Court has stated, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

Second, and more to the point, the ALJ's failure to make specific findings means that he still has not answered the critical question of whether plaintiff's headaches prevent him from working because of the number of days per month they are incapacitating. Plaintiff testified at the post-remand hearing that during the relevant period he was experiencing three to five migraines per month and that each headache was "very debilitating" and incapacitated him for one to two days (Tr. 949-50, 957, 971, 973-74). This testimony, which the ALJ did not reject, means that during the relevant period plaintiff's migraines prevented him from working

---

        became less frequent and less severe following shunt revision surgery.

(Tr. 883-84).

7

between three and ten days per month. At the first hearing, plaintiff testified that because of his migraines he would have called in sick six to eight days per month during the relevant period (Tr. 170). At both hearings, the VE testified that regularly missing two days of work per month is disqualifying. The ALJ did not explain how plaintiff could work despite such high absenteeism.

Third, substantial evidence does not support the ALJ's finding that plaintiff's headaches are not disabling because they were "successfully treated" (Tr. 884). The only treatment of plaintiff's migraines that can reasonably be characterized as "successful" in any degree is the shunt revision surgery in February 2014. But this surgery took place after plaintiff's insured status had expired (in September 2013), and as the ALJ noted elsewhere in his decision, evidence post-dating the date last insured "is . . . not relevant to a finding of disability" (Tr. 892). For the same reason, the ALJ's statement that plaintiff's "headaches are less frequent since the last increase in Paxil" (Tr. 883) is irrelevant, as this refers to a medical note from June 2015 (Tr. 1845). There is no evidence in the record to suggest that plaintiff's headaches significantly improved during the relevant time frame, i.e., from October 2009 to September 2013. Moreover, the improvement following the shunt revision surgery was that the frequency lessened (from three to five per month to two to three), but the intensity remained the same (Tr. 974). Even the improved number of migraines is, according to the VE testimony, disabling given that plaintiff needs one to two days to recover from each episode.

The ALJ likewise disregarded the Court's instructions to make specific findings as to the nature and extent of the pain and numbness in plaintiff's feet and right leg, and to incorporate these findings in a revised RFC assessment and in revised hypothetical questions

8

to the VE. *See Jablonski*, 2015 WL 1493096, at *4. The Court stated:

> [T]he ALJ failed to make findings regarding the nature and extent of the pain and numbness plaintiff alleges he experiences in his feet. Plaintiff testified he "get[s] shooting pains on occasion in both feet" (Tr. 149), but neither the ALJ nor plaintiff's attorney inquired further. In his Disability Report plaintiff listed problems with his feet as one of the conditions that limits his ability to work (Tr. 263) and in his Function Report plaintiff indicated that "[d]riving, standing, or walking over 45 minutes tends to cause increasing numbness in my leg and foot" (Tr. 295). Plaintiff has told his physicians that "[t]he more he walks, the more his right foot goes numb" (Tr. 529); that "[w]ith walking, standing he has an increase in his low back pain and has right foot and leg numbness" (Tr. 551); that "[w]hen he walks, his right foot becomes very numb and he ... can't feel it. The bottoms of both feet (R>L) are in pain when he walks—he describes the pain as cramping, aching and zapping" (Tr. 600); and that "[h]e gets pain and cramping in both feet" (Tr. 623). While the ALJ briefly discussed plaintiff's "numbness/tingling ... in the lower right extremity" (Tr. 133) and plaintiff's "right lower leg intermittent sensation problems" (Tr. 134), he made no findings specifically about the pain and numbness in plaintiff's feet. It is not clear how a person can walk and stand for six hours during an eight-hour work day, and use foot controls occasionally, if his feet are numb and painful. On remand, the ALJ must consider this impairment, determine its nature and extent, and include these findings in his RFC assessment and in proper hypothetical questions to the VE.
>
> Likewise, the ALJ's analysis of plaintiff's right leg numbness is insufficient. Plaintiff testified that his "right leg goes numb" daily, causing him to fall "[a]bout once a month" (Tr. 149). Plaintiff has complained repeatedly to various physicians about this numbness causing him to fall (Tr. 410, 422, 529, 540, 549, 551, 555, 607, 671, 673). The ALJ minimized the significance of this numbness, characterizing it as intermittent (Tr. 127), occasional and mild (Tr. 133), and noting that plaintiff does not use a cane, that his gait has been observed to be normal, and that he is able to engage in certain daily activities (Tr. 133-34). This characterization of plaintiff's right leg numbness is not supported by an objective review of the medical evidence. In September 2010 x-rays and CAT scans showed "[r]ight S1 radicular symptoms" and "advanced degenerative disease" (Tr. 551) and a CT scan showed "[m]ultilevel discogenic degenerative change of the lumbar

> spine.... Findings are most pronounced at L4–L5 and L5–S1" (Tr. 579). The same month an EMG showed "evidence of a chronic, mild right L5 radiculopathy with only mild ongoing motor denervation in the right medial gastronemius" (Tr. 607). In November 2010 an MRI showed a "persistent left lateral disc protrusion ... causing moderate to severe narrowing of the left neural foramen and likely deforming the exiting left L4 nerve root" (Tr. 576). In December 2010 an EMG showed evidence of right L5 radiculopathy, chronic right S1 radiculopathy, and left L5 radiculopathy" (Tr. 600-01). A neurologist who reviewed these results in February 2011 indicated that plaintiff has "bilateral radiculopathies at L5–S1" and that his "L5 radic on the right appears to be getting worse, based on the EMG study" (Tr. 671-72). In December 2011 an MRI revealed "endplate degenerative signal changes within the lower lumbar spine. Some substantial neuroforaminal stenosis is again present at the L4–L5 and L5–S1 levels" (Tr. 571) and "a small centrally bulging disk at L4/L5 without significant foraminal narrowing" (Tr. 704). On this record, the ALJ's statements that "objective abnormalities" are lacking and that plaintiff's numbness is "mild" and "occasional" are unsupportable. On remand the ALJ must evaluate the objective evidence more closely, make specific findings as to the extent of plaintiff's leg numbness and the frequency of his falls, and include these findings in his RFC assessment and in his hypothetical questions to the VE.

*Id.* (footnote omitted). This issue is important in this case because plaintiff testified that he can stand for only forty-five minutes and walk two or three blocks (Tr. 151), whereas the ALJ found that he can do light-level work (Tr. 132) which, as defined by 20 C.F.R. § 404.1567(b), requires the ability to stand and/or walk for up to six hours during an eight-hour workday. *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 429 (6th Cir. 2015). On remand, the ALJ again found that plaintiff can stand and walk to this extent (Tr. 881).

Instead of complying with the Court's instructions, the ALJ merely summarized the evidence relating to plaintiff's back, legs, ankles, and feet, and then stated:

> The District Court recommended that the Administrative Law Judge reassess the claimant's complaints of foot and leg numbness (Exhibit

10

> 5A). While the claimant reported some falls and balance issues in regards to his radiculopathy and neuropathy symptoms, the aforementioned residual functional capacity assessment sufficiently accounts for these difficulties in restricting the claimant's postural and environmental activities and use of foot and leg controls.
>
> \* \* \*
>
> The claimant's degenerative disc disease of the lumbar and cervical spines; osteoarthritis; degenerative joint disease of the left knee, hip, and shoulder; tibial neuropathy; and bilateral carpal tunnel syndrome cause symptoms that support a limitation to work at the light exertional level . . . . The claimant's back pain, coupled with numbness in the bilateral legs and feet and bladder control and incontinence issues associated with chronic kidney disease and benign prostatic hyperplasia, limits the claimant to standing/walking for about 6 hours and sitting for up to 6 hours in an 8-hour workday, with normal breaks. . . .

(Tr. 885, 893).

This conclusion is not supported by substantial evidence. The ALJ noted that three physicians expressed opinions that relate to the limitations on plaintiff's ability to stand and walk due to the pain and numbness in his feet, legs, and back (Tr. 890-92). Dr. Buchman, an orthopedist, opined in January 2012 that plaintiff "is not able to sit or stand for prolonged periods of time" (Tr. 2190), and Dr. Mayer, and osteopathic surgeon, opined in June 2010 that there was "no indication to suggest need for ongoing restrictions" (Tr. 2222). The ALJ gave "little weight" to these opinions (Tr. 890-91), but "great weight to the opinion of the State agency examiner [Dr. Hahn] regarding the claimant's physical ability to perform basic work activities, as it is consistent with the medical evidence of record" (Tr. 892). Among other things, Dr. Hahn opined that plaintiff could stand and/or walk for six hours per eight-hour workday and that he could sit for six hours per eight-hour workday (Tr. 1040). But there is a problem with Dr. Hahn's report, which included the following statement:

11

> THIS IS DRUMMOND AND DENNARD CASE. THERE'S ALJ DECISION ON 3/26/2013. THERE'S NO NEW MATERIAL SINCE DECISION. . . . THERE'S NO WORSENING OR PROGRESSION OF PREEXISTING MDLs. ALJ DECISION THEREFORE WAS ADOP[T]ED.

(Tr. 1042).[5] It was the ALJ's March 26, 2013, decision that this Court found to be unsupported by substantial evidence. Following this Court's March 2015 order of remand, the Appeals Council vacated that ALJ decision (Tr. 1029). Therefore, it was obviously erroneous for the ALJ on remand to give any weight, to say nothing of "great weight," to Dr. Hahn's RFC assessment, as that assessment "adopted" the ALJ's vacated decision. By relying on Dr. Hahn's RFC assessment, the ALJ did nothing more than rely on his own earlier, vacated RFC assessment, which Dr. Hahn, by referring to *Drummond* and *Dennard*, apparently felt compelled to follow. That is to say, in concluding that plaintiff can stand and/or walk for six hours during an eight-hour work day, the ALJ relied on his own vacated assessment, not on the opinion of any medical professional.

The Sixth Circuit has held that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The instant matter is such a case. Plaintiff's migraine headaches alone bring this case into this narrow category. The ALJ, who has found that plaintiff's headaches are among his severe impairments, has cited no evidence (and the Court in its own review of this voluminous record has found none) to contradict plaintiff's testimony that during the relevant period he experienced such

---

[5] In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the court of appeals held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." In *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990), the court of appeals held that an ALJ is generally bound by prior ALJ's factual determinations.

headaches at least three times per month and that each episode required him to lie down for one to two days to recover. Plaintiff's undisputed testimony is that during this period he would have had to call in sick six to eight times per month. Given the VE testimony, which is also uncontested, that a person who regularly misses just two days of work per month is unemployable, the frequency, intensity, and duration of plaintiff's migraines are plainly disabling.

Additionally, there is no credible opinion evidence that supports the ALJ's conclusion that plaintiff can meet the standing and walking requirements of light-level work. While Dr. Mayer opined that there was "no indication to suggest need for ongoing restrictions" (Tr. 2222), the ALJ understandably rejected this opinion in light of the evidence "confirm[ing] that the claimant had chronic pain from degenerative disc disease, degenerative joint disease, tibial neuropathy, and osteoarthritis" (Tr. 891). The only evidence the ALJ cited for to support his finding regarding plaintiff's ability to stand and walk is the report of the state examiner, Dr. Hahn, whose opinion carries no weight, as he believed this to be "a *Drummond* and *Dennard* case" and therefore simply adopted the ALJ's erroneous and vacated RFC assessment. Further, the objective evidence of plaintiff's multiple impairments in his back, hips, legs, ankles, and feet, including lumbar radiculopathy, osteoarthritis in multiple major joints, neuropathy in both ankles, and two surgeries for herniated discs at L4-5, amply support plaintiff's testimony that his ability to stand and walk are severely limited. The ALJ's finding that plaintiff can engage in these activities for six hours per day on a full-time basis has no support in the record.

The Court concludes that in this case "proof of disability is overwhelming or . . . . the proof of disability is strong and evidence to the contrary is lacking." Accordingly,

13

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and that this matter is remanded for an award of benefits.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: August 31, 2020　　　SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan